White, J.
The question now before us for determination, in this case, is, whether the defendant, in regard to its right to charge rent for gas meters, is subject to the act entitled “ an act for the inspection of gas meters, the protection of gas consumers, and the protection and regulation •of gas companies,” as amended March 9; 1867. S. & S. 160.
Section 15 of the act provides, “ This act shall apply to .•all companies who manufacture gas for sale.” And the .amendatory act contains this provision: “ No gas company :shall have the right to charge rent for meters, when five hundred cubic feet per month have been consumed.”
*580 ■ The defendant claims that it is not subject to the operation of this statute, and asserts the right, under its charter* to exact rent for meters irrespective of the statute.
This right is denied by the state on two grounds. These-grounds, stated in the inverse order in which they are argued, are, in substance:
1st. That the right of defendant to charge for the use of meters, as well as for gas furnished, is subject to legislative-control.
2d. That if such right of control did not exist under the-original charter, yet the defendant, by increasing its capital stock, under the authority of the present constitution, became subject to such control.
If the first of these positions is well taken, the determination of the correctness of the second is not necessary to the decision of the case before us.
. As to the first ground: Whether this ground is well taken or not, depends upon the terms of the charter. The-charter provides that the corporation “ shall have power to-manufacture and sell gas, to be used for the purpose of lighting the city of Columbus, or the streets thereof, and. any buildings, manufactories, public places, or houses therein, and to.erect necessary works and apparatus for-conducting gas in the streets and avenues of the city.” The directors of the corporation are authorized to make-such by-laws and rules for their own government, and for-regulating all matters pertaining to the concerns of the-company, as they shall deem necessary and proper; provided such rules and regulations are not inconsistent with the constitution and laws of the United States or of this state. The charter likewise provides that the “ company shall have the exclusive privilege of supplying the city of Columbus and its inhabitants with gas, for the purpose of affording light, for the term of twenty years.”
■The. corporators and their associates are authorized to employ their means, to the extent and in the manner provided by the charter, to accomplish the public purpose of supplying the city of Columbus and its inhabitants with *581 ;gas. In the accomplishment of this purpose the public have an interest. The main object of the charter was not the. private emolument of the corporators and stockholders, but the promotion of the public convenience and welfare. 'This object, it is true, is to be accomplished upon the terms prescribed by the charter, subject to the right of such supervision and control as may have been withheld in the grant, in favor of the public.
In the present ease, it is claimed on the part of the defendant, that no right is reserved, on behalf of the public, ■to control the price of gas, or the amount to be charged for ■the use of meters; but that this power, under the charter, •rests exclusively in the discretion of the defendant.
Before this right of exemption from legislative control •can be asserted, the right must appear to have been clearly granted by the charter. “ The rights of the public are never presumed to be surrendered to a corporation, unless the intention to surrender clearly appears in the law.” Perrine v. Chesapeake & Delaware Canal Co., 9 How. 172, 184, 192.
The charter, in the present instance, grants to the defendant the exclusive right of supplying the city and its inhabitants with gas, for the term of twenty years. It ■operates, therefore, not only to confer a public franchise on the defendant, but also to restrict the public from supplying its necessities from any other source. This creates a monopoly in the defendant for the time the right is made exclusive. It is unreasonable, therefore, to infer that it was the intention -of the legislature to exempt the defendant from all public -control, in respect to the terms upon which it should be re■quired to discharge its duties to the public, unless such intention is found clearly expressed in the charter. The •charter expresses no such intention. On the contrary, the plain implications are against the existence of any such ex-emption. The directors are authorized, by the charter, to make by-laws and rules for regulating all matters pertaining to the company, but such regulations are required to be consistent with the laws of the state. This provision *582 is not limited to laws then in force; but extends also to such laws as may be passed in the future. The charter does not prescribe the terms upon which gas is to be furnished to the public. The whole matter is left to be determined by such rules and regulations, not inconsistent with the laws of the state, as the directors may prescribe.
The business in which the defendant is engaged largely concerns the public. As already remarked, the main purpose of its creation was to subserve the public interest.
In Munn v. Illinois, 94 U. S. 118, it was laid down, in respect to natural persons, that “ where the owner of property devotes it to a use in which the public have an interest, he in effect grants to the public an interest in such use,, and must, to the extent of that interest, submit to be controlled by the public, for the common good, as long as he-maintains the use.”
In that case the principle was applied to warehousemen,, who were engaged in receiving and storing grain, and it was held that their rates of charges were subject to legislative regulation.
The principle applies with greater force to corporations-when they are invested with franchises to be exercised to» subserve the public interest. Deriving their powers by grant directly from the public, they are clearly subject to-public control, in respect to the terms upon which their franchises are to be exercised, unless they are protected by their charters from such interference. Blake v. Winona and St. Peter Railroad Co., 19 Minn. 419; s. c., 94 U. S. 180 ; Chicago, Burlington and Quincy Railroad Co. v. Iowa, Id. 155 ; Peik v. Chicago and Northwestern Railway Co., Id. 165.
' As we find nothing in the terms of the charter of the defendant which protects it from legislative control in respect to the matter in question, the right which it sets up to-charge for the use of meters, in contravention of the statute, is without warrant in law; and the plea setting up such, right is adjudged insufficient.

Judgment accordingly.