Mr. Justice CAMPBELL
 

 delivered the opinion of. the court.
 

 The defendants are separate corporations, existing under the laws of Indiana, and were created to construct distinct lines of railroad that connect at Indianapolis, in that State. The plaintiff is the assignee of five promissory notes, that wei’e executed under conditions set forth in the declaration, and of which he had notice. The two corporations, (defendants,) some time before the date of the notes, were consolidated by agreement, and assumed the name of the Madison, Indianapolis, and Peru Railroad Company,-and under that name, and under a common board of management, conducted the business of both lines of road.
 

 While the business of the two corporations was thus directed and managed, the president of the consolidated company gave these notes in its name in payment for a steamboat, which was to be employed on the Ohio river, to run in connection with the railroads. After the execution of the notes, and the acquisition of the boat, this relation between the corporations was dissolved by due course of law, and, at the commencement of the suit, each corporation was managing its own affairs. The plaintiff’ claims'that the two corporations are jointly bound for the payment of the notes, but the Circuit Court sustained a demurrer to the declaration.
 

 The rights, duties, and obligations of the defendants are defined in the acts of the. Legislature of Indiana under which they were organised, and reference must be had to tb ese, to
 
 *443
 
 ascertain the validity of their contracts. They empower the defendants respectively to do all that was necessary to construct and put in operation a railroad between the cities which are named in the acts of incorporation. There was no authority of law to consolidate these corporations, and to place both under the same management, or to subject the capital of the’ one to answer for the liabilities of the other; and so the courts of Indiana have determined. But in addition to that act of illegality, the managers of these corporations established a steamboat lihe-j;o run in connection with the railroads, and thereby diverted their capital from the objects contemplated by .their charters, and exposed it to perils, for. which they afforded-no sanction. Now, persons dealing with the managers of a corporation must take notice of the limitations imposed upon their authority by the act of incorporation. Their powers are conceded in consideration of the advantage the public is to receive from their discreet and intelligent employment, and the public have an interest that neither the managers nor stockholders of the corporation shall transcend their authority. In McGregor
 
 v.
 
 The Official Manager of the Deal and Dover Railway Co., (16 L. and Eq., 180,) it was considered that a railway company incorporated by act of Parliament was bound to apply all the funds of the company for the purposes directed and provided for by the act, and for no other purpose whatever, and that a contract to do something beyond these was a contract to do an illegal act, the illegality of which, appearing by the provisions of a public act of Parliament, must be taken to be known to the whole world. In Coleman
 
 v.
 
 The Eastern Counties Railway Co., (10 Beav., 1,) Lord Langdale, at the suit of a shareholder, restrained the corporation from using its funds to establish a steam communication between the terminus of the road (Harwich) and the northern ports of Europe. The directors of 'the company vindicated the appropriation as beneficial to the company, and that similar.arrangements were not unusual among railway companies. . Lord Langdale said : “Ample powers are given for the purpose of constructing and maintaining the railway, and for doing all those things inquired for its proper use when made. But I apprehend that it has no
 
 *444
 
 where been stated' that a railway company, as such, has power to enter into all sorts of other transactions.' Indeed,.it has been very properly admitted that railway companies have no right, to enter into new trades of businesses not pointed out by the acts. But it has been contended that they have a' right to • pledge, without limit, the funds of the company for the encouragement of other transactions,, however various and extensive, provided that the object of that liability is to increase the traffic upon the railway, and thereby to increase the profit to the shareholders. \ •
 

 “ There is, however, no authority for anything of that kind.It has been stated that these things, to a small extent, have been frequently done siiice the establishment of railways; but. unless the acts so done can be proved to be in conformity with ' the powers given by the special acts of Parliament, under which those acts are done, they furnish no authority whatever. In the East Anglian Railway Company
 
 v.
 
 The Eastern Counties Railway Company, (11 C. B., 803,) the court say the statute incorporating the defendants’ company gives no. authority respecting the bills in Parliament promoted by the plaintiffs, and we are therefore bound to say that any contract relating to such bills is not justified by the act of Parliament, is not within the seope of the authority of the company as a corporation, and is therefore void.”
 

 We have selected these cases'to illustrate'the principle upon which the decision of this case has been made. It is not a new principle in the jurisprudence of this court. It was declared in the early case of Head
 
 v.
 
 Providence Insurance Company, (2 Cr., 127,) and has been reaffirmed .in a number of others that followed it. (Bank of Augusta
 
 v.
 
 Earle, 13 Pet., 519; Perrine
 
 v.
 
 Ches. and Ohio Railroad Company, 9 How., 172.)
 

 It is contendéd, that because the steamboat was delivered to the defendants, and has been converted to their use, they are responsible. It is enough to say, in' reply to this, that the .plaintiff was not the owner of the boat, nor does he claim under an assignment of the owner’s interest. His suit is instituted on the notes, as an endorsee; and the .only question . is, had the' corporation the capacity to make the contract, in
 
 *445
 
 the fulfilment of which they were executed ? The opinion of the court is, that it was a departure from the business of the corporation, and that ttieir officers exceeded their authority. Judgment affirmed.