GEORGE W. RICHARDSON & others *vs.* JONATHAN B. SIBLEY.[*]

A street railway corporation has no power to mortgage its franchise, road or property without legislative authority; and under *St.* 1864, *c.* 229, a mortgage by such corporation of substantially all of its property, without such authority, is wholly void.

REPLEVIN of horse cars and other property attached by the defendant, a deputy sheriff, as the property of the Worcester Horse Railroad Company, upon a writ in favor of the Central National Bank of Worcester. The facts were agreed in this court, and the following are all that, under the decision, proved to be material:

The Worcester Horse Railroad Company was chartered as a corporation by *Sts.* 1861, *c.* 148; 1863, *c.* 19; and 1864, *c.* 102, under which it was organized and went into operation. On the 15th of February 1865 the corporation executed to the plaintiffs a mortgage of all the property, real and personal, (except four small cars, which were not included in this suit,) which it then owned or might thereafter acquire, including the railroad track, furniture, rolling stock, cars, horses, and other property of every description, and all appurtenances, appendages and franchises of the corporation; in trust, however, to apply the proceeds to the payment of certain bonds therein described, in case the corporation should not pay the same at maturity. Bonds corresponding with the description contained in the mortgage and referring to it were accordingly issued.

The Central National Bank of Worcester became creditors of the above corporation in February 1864, to the amount of $2500, as security for which they afterwards accepted bonds to

* This case was argued in Boston in January 1866, before the same justices.

that amount, issued as above set forth; and commenced an action upon their debt, in which the cars and other property now replevied were attached by the defendant; being a part of the same property included in the mortgage to the plaintiffs. Due demand was made by the plaintiffs upon the bank.

*B. F. Thomas & D. Foster,* for the plaintiffs. If the corporation was capable of mortgaging the property described in the writ, the instrument would avail *pro tanto,* even though it included other property which the company were by statute prohibited to mortgage. *Irvine* v. *Stone,* 6 Cush. 508. *Rand* v. *Mather,* 11 Cush. 1. *Commonwealth* v. *Hitchings,* 5 Gray, 485. *Amesbury* v. *Bowditch Ins. Co.* 6 Gray, 607. The corporation clearly had the power either to sell or mortgage these articles of personal property prior to the enactment of *St.* 1864, *c.* 229, § 24. *Shaw* v. *Norfolk County Railroad,* 5 Gray, 180. *Treadwell* v. *Salisbury Manuf. Co.* 7 Gray, 393. *Commonwealth* v. *Smith,* 10 Allen, 448. That statute does not deprive the corporation of the power to mortgage its personal property. A mortgage is not within the terms of the statute, which extends only to sales and leases, and must be construed strictly, because it takes away a common law right. *Schooner Paulina* v. *United States,* 7 Cranch, 52. *Smith* v. *Spooner,* 3 Pick. 229. *Sewall* v. *Jones,* 9 Pick. 412. By the reasoning of the defendant, if carried one step further, the corporation could not contract a debt, which might be the foundation of an execution, and so of a sale; or sell even the smallest article of personal property, though it had ceased to be useful. The legislature did not intend to disable this class of corporations from voluntarily securing their debts upon property which creditors may sweep away in the order of successive attachments. *Ryegate* v. *Wardsboro,* 30 Verm. 749. The true construction of the act appears from the history of the passage of the bill. Pub. Legis. Docs. 1864. The prohibition to sell or lease was inserted in a section providing how street railways under lease should make their annual returns.

*G. F. Hoar & T. L. Nelson,* for the defendant.

GRAY, J. A corporation has no power to do any acts which the legislature has expressly or by necessary implication

prohibited it from doing. A corporation, created for the very purpose of constructing, owning and managing a railroad, for the accommodation and benefit of the public, cannot, without distinct legislative authority, make any alienation, absolute or conditional, either of the general franchise to be a corporation, or of the subordinate franchise to manage and carry on its corporate business, without which its franchise to be a corporation can have little more than a nominal existence. *Shrewsbury & Birmingham Railway* v. *London & Northwestern Railway*, 6 H. L. Cas. 136, 137. *York & Maryland Line Railroad* v. *Winans*, 17 How. 39. *Pierce* v. *Emery*, 32 N. H. 504, 508. *Hall* v. *Sullivan Railroad*, 21 Law Reporter, 140, 141. *Worcester* v. *Western Railroad*, 4 Met. 566. *Commonwealth* v. *Smith*, 10 Allen, 455, 456. Such was the opinion deliberately formed and expressed by this court in the case last cited, after able arguments in which the authorities were fully referred to ; and a mortgage by a railroad corporation of its franchise, railroad and all other property, made without authority of the legislature, was accordingly declared to be void as against a subsequent valid mortgage to the Commonwealth.

The powers of the Worcester Horse Railroad Company under its charter are quite as limited in this respect. The only powers expressly conferred are " to construct, maintain and use a railway, with convenient single or double tracks," over such streets and highways in the city of Worcester as the mayor and aldermen may designate ; and to purchase and hold such real estate in that city, " as may be convenient or necessary for the purposes and management of said road." *Sts.* 1861, *c.* 148, §§ 1, 8 ; 1864, *c.* 102. The main object of the legislature in establishing such corporations and granting to them the privilege of using the highways in a peculiar manner is not the profit of the grantees, but the accommodation of the public. *Commonwealth* v. *Temple*, 14 Gray, 89.

Some earlier statutes had expressly authorized particular corporations of this kind to mortgage their corporate property to secure the payment of bonds issued by them ; and provided that, in case of failure to perform the conditions of such bonds, the

property might be sold, and the purchasers, before beginning the business of managing the road, should become a corporation with the powers and privileges, duties and restrictions, of the original corporation. *Sts.* 1855, *c.* 24; *c.* 408, § 11; 1856, *c.* 279; 1857, *c.* 278, § 9; 1859, *c.* 144, § 9; *c.* 202, § 13; 1861, *c.* 48, § 11; *c.* 147, § 4. And some such corporations had been in terms authorized to lease or assign their franchise and all or part of their tracks to other similar corporations. *Sts.* 1855, *c.* 338; 1857, *c.* 211, § 4; *c.* 216, § 4; *c.* 227, § 14; *c.* 250; 1858, *c.* 38, § 9; 1859, *c.* 35, § 2; *c.* 180, § 2; 1861, *c.* 48, § 13; *c.* 81; *c.* 89, § 8; *c.* 90, § 3; *c.* 135, § 8. In each of those instances the property or franchise of the first corporation would pass into the possession and management of another corporation, subject to the like legislative control as the first; not into the hands of individuals.

The charter of the Worcester Horse Railroad Company contains no express permission to make any lease, sale or mortgage whatever. In the absence of any such controlling clause, many provisions of the charter show that the legislature contemplated the exercise of its franchise by the corporation itself. " Said tracks shall be operated and used by said corporation with horse power only." *St.* 1861, *c.* 148, § 3. The only liability declared for injuries occasioned by neglect or misconduct in the management, construction or use of the road, or for wilfully obstructing the highway, is for the acts of the corporation, " its agents or servants," which would not naturally include agents and servants of its grantees or assignees. *St.* 1861, *c.* 148, §§ 4, 6. The right is given to the city of Worcester, at any time during the continuance of the charter and after ten years from the opening of any part of the road for use, to " purchase of said corporation all the franchise, property, rights and furniture of said corporation" at a certain rate; § 12; and the corporation is obliged to make annual returns to the legislature, like other railroad corporations. § 14.

The fourteenth section of the charter also makes this corporation subject to " all general provisions of law that are or may be prescribed relative to horse or street railroads." Th

*St.* of 1864, *c.* 229, entitled "an act concerning street rail-
way corporations," declares that "street railway companies
shall have the powers and privileges, and be subject to the
duties, liabilities, restrictions and provisions, contained in this
act, which, so far as inconsistent with charters heretofore
granted, shall be deemed and taken to be in alteration and
amendment thereof." § 1. There is nothing in this statute to
authorize a sale or mortgage of the franchise of any corpora-
tion which did not have the power to make one already. The
statute not only embraces provisions similar to those above
quoted from the charter of the Worcester Horse Railroad Com-
pany, except that authorizing the city to purchase the fran-
chise; §§ 16, 18, 24, 34, 40; but it expressly declares that "the
immediate government and direction of the affairs of the corpora-
tion shall be vested in the board of the directors," and contains
rules for the mode of managing its affairs by itself and its offi-
cers, not unlike those which were held by this court, in the case
of *Whittenton Mills* v. *Upton*, 10 Gray, 596, to be inconsistent
with permitting a manufacturing corporation to make a contract
of copartnership with an individual; §§ 2–9; and it requires
that "every such corporation shall furnish reasonable accommo-
dations for the conveyance of passengers, and the directors may
establish the rates of fare on all passengers and property con-
veyed or transported in its cars, subject however to the limita-
tions named in its charter." § 26.

It is true that several sections of this statute speak of any
such corporation, "its lessees or assigns;" §§ 18, 22, 29, 30, 31;
and § 40 requires the directors to make annual reports to the
secretary of the Commonwealth "of their doings under its char-
ter," setting forth "copies of all leases and contracts made dur-
ing the year with other corporations and individuals," and (as
had previously been required by the Gen. Sts. *c.* 63, § 143) con-
taining full information upon a great variety of items, among
which are mentioned "number of mortgages on road and fran
chise," and "on any other property of the corporation," and the
increase or decrease of mortgage debt during the year. The
form of returns here prescribed is general, to be used by all

horse or street railway corporations, some of which had already received and others might afterwards obtain grants of authority to assign, mortgage or lease their franchise, road or other property. One object in requiring copies of all leases and contracts made during the year may well have been to enable the Commonwealth to determine whether any such corporation had exceeded the powers conferred by its charter or by other statutes, and should on that account be held to have forfeited its franchises.

That the mention of leases, assignments and mortgages was not intended to imply any new authority to execute any such conveyance is made quite clear by the express enactment of § 24 (which is decisive of this case) that " no street railway corporation shall lease or sell its road or property, unless authorized so to do by its charter, or by special act of the legislature." The manifest object of this section is to prohibit the transfer of the possession and control of the franchise and property of the corporation to any other person or corporation without authority from the legislature by which its rights were granted and its duties imposed. The prohibition is broader and more sweeping than is applied to ordinary railroad corporations. They cannot sell their franchises; yet they may contract with each other that either shall do all the transportation over the road of the other. Gen. Sts. *c.* 63, § 115. But these are not even to do that; they are not to " sell or lease." This prohibition is not limited to alienations of their franchises, but extends to their " road or property." It is unimportant whether this word " road " is taken in its narrower and more literal sense, as describing only the tracks and rails and right of way, or in the broader and more common meaning, as including also the franchise or right of running horses and cars over them and taking fares, and the horses and cars themselves; for even if it is to be taken in the more limited meaning, the prohibition to " sell or lease its road " cannot imply a permission to transfer the franchise, without which the corporation could not carry on the business of transportation over the road, and which the corporation had previously no power to alienate. If the prohibition against alienation had

been limited to the franchises only, the corporation might perhaps have disposed of the tracks and rails, as well as of the cars, horses and other personal property. The legislature have removed all doubt on this point, by prohibiting the sale or lease of the "road or property." They have not said, and cannot be fairly understood to mean, that the corporation shall not dispose of any part of its property, of a few horses or cars, or worn out rails, or other articles the sale or transfer of which would not impair its powers to carry on its business. But any alienation, either in fee, or for the period of its corporate existence, or for any less term, of substantially all its real and personal property, so as to disable it from carrying on the business which it had been chartered to do for the benefit of the public, is clearly within the terms and the meaning of this prohibition. It makes no difference whether the transfer is absolute or conditional, to take effect immediately upon its delivery or at some future time. A mortgage, transferring a title which upon the happening of a certain contingency may be made absolute by sale or foreclosure, has the effect, as soon as it becomes of any value to secure the purpose for which it was made, to accomplish as complete a transfer of the corporate franchise and property and the means of performing the corporate duty, as if it had been originally an outright sale.

It was argued by one of the learned counsel for the plaintiffs that the franchise to take toll might be taken on execution, and therefore might be mortgaged. It would be more accurate to say that such a franchise could not be sold or mortgaged, and therefore could not be taken on execution, without authority of the legislature. The Gen. Sts. *c.* 68, §§ 25–34, providing a mode of attaching and taking on execution " the franchise of a turnpike or other corporation authorized to receive toll, and all the rights and privileges thereof," are mainly derived from the *St.* of 1810, *c.* 131, which was passed shortly after the expression of a significant doubt by this court whether such a franchise could be taken on execution in the absence of express statute. *Tippets* v. *Walker*, 4 Mass. 596, 597. According to later authorities it could not. 2 Kent Com. (6th ed.) 284, *note.* Redfield on

Railways, 606. *Covington Drawbridge* v. *Shepherd,* 21 How 124. *Gue* v. *Tide Water Canal,* 24 How. 263.

The *St.* of 1864, *c.* 229, and the charter of the Worcester Horse Railroad Company are public statutes which all persons dealing with that corporation were bound to take notice of and be governed by; and the restraints thereby established on the alienation of the franchise and property of the corporation were founded in considerations of public policy, which neither the corporation nor any other person can be allowed to evade or disregard. *Pearce* v. *Madison & Indianapolis Railroad,* 21 How. 443. *Zabriskie* v. *Cleveland, &c. Railroad,* 23 How. 398. *Whittenton Mills* v. *Upton,* 10 Gray, 598. *Commonwealth* v. *Smith,* 10 Allen, 459. The plaintiffs therefore acquired no title by the conveyance to them; and the creditors of the corporation could not, by taking bonds purporting to be secured by a conveyance which was void on its face, be estopped to deny its validity or to pursue the ordinary legal remedies for the collection of their debts.

It was strongly urged by the plaintiffs that even if this conveyance violated the provisions of the statutes of the Commonwealth, it might still be good so far as to pass a title in the particular articles attached by the defendant. But the conveyance undertakes to assign to the plaintiffs as one subject matter all the franchises of the corporation, and substantially all its property, real and personal, already owned, or afterwards to be acquired. It manifests no intention to convey these few articles apart from the rest of the property and franchises granted; and there is no rule of law by which these articles, rather than any other part of the property, can be separated from the mass mentioned in the deed, and the conveyance held good as to them. The prohibition of the statute is general, that the corporation shall not alienate its property. This corporation has violated the statute by undertaking to alienate substantially all its property. If the position of the plaintiffs could be maintained, it would avail equally against an attachment of any other part of the property so illegally alienated, and the corporation might set this conveyance up in turn against every creditor seeking to

attach any property of the corporation; and this conveyance being invalid, the creditors would be left without any security for their debts, or any means of enforcing them against the property of the corporation.

This conveyance, whether regarded as a mortgage or as a deed of sale in trust, being wholly void and inoperative, because made in violation of the public policy of the Commonwealth as manifested in its statutes, it is unnecessary to consider particularly the nature of the instrument, or the other grounds upon which the defendant has denied its validity.

*Judgment for the defendant*