FRANKLIN COMPANY in equity *vs.* LEWISTON INSTITUTION FOR SAVINGS.

Androscoggin. Decided December 18, 1877.

*Corporations. Contracts ultra vires.*

Corporations possess such powers, and such only, as the law of their creation confers upon them ; and when created by public acts of the legislature, parties dealing with them are chargeable with notice of their powers, and the limitations upon them, and cannot plead ignorance in avoidance of the defense of *ultra vires.*

The trustees of the Lewiston Instition for Savings subscribed for $50,000 of the capital stock of the Continental Mills, and having no money to pay for it, the Franklin Company, another corporation, paid that amount to the Continental Mills, taking the notes of the savings institution therefor, and a certificate of the stock in their own name as collateral security for the payment of the notes. *Held,* that the action of the trustees of the savings institution was *ultra vires;* that it is not within the authority of savings institutions, at a time when they have no funds for investment, to purchase stocks or other property, not needed for immediate use, on credit, and thus create a debt binding upon the institution; that the Franklin Company, having participated in the illegal transaction, could not claim the privileges of a *bona fide* holder of commercial paper; and that the savings institution, having received no benefit from the transaction, was not estopped to set up the defense of *ultra vires.*

*Semble,* upon the authorities cited, that in the United States, corporations cannot purchase, or hold, or deal in the stocks of other corporations, unless expressly authorized to do so by law.

*W. P. Frye, J. B. Cotton & W. H. White,* with whom was *N. Webb,* for the plaintiffs.

*N. Morrill,* for the defendants.

WALTON, J. The claim which we are required to pass upon originated in this way :

In April, 1875, the trustees of the Lewiston Institution for Savings subscribed for $50,000 worth of the capital stock of the Continental Mills, one of the manufacturing corporations doing business at Lewiston. The savings bank had no money with which to pay for the stock, and in July following the Franklin Company, another corporation doing business at Lewiston, agreed to pay the $50,000 to the Continental Mills, take the notes of the savings bank for the amount, and hold the stock as security. Five

notes for $10,000 each, payable in one year from date, with interest semi-annually, were prepared and signed by the treasurer of the savings bank, and sent to William B. Wood, at Boston; and he, being treasurer of the Continental Mills as well as treasurer of the Franklin Company, paid the money in his latter capacity to himself in his former capacity, and afterwards, (when does not appear) made a certificate, signed by himself and the president of the Continental Mills corporation, stating that the Franklin Company was the " proprietor of five hundred shares in the Continental Mills, as collateral." It does not appear that this certificate was ever delivered to the savings bank, or offered to them, or that any of its officers ever knew of its existence. And it does not show upon its face that the savings bank has any interest in the stock, or connection with it whatever. The Lewiston Institution for Savings having become insolvent, in May, 1876, commissioners were appointed to receive and decide upon all claims against the institution. The Franklin Company presented for allowance the five notes above described, and afterwards filed a claim for $50,000 and interest, as so much money paid out by the Franklin Company at the request and for the benefit of the savings institution. Both claims were rejected by the commissioners, and the case is before the law court on report agreed to by counsel. There is no other consideration for the notes, and no other basis for the claim for money paid, than the payment to the Continental Mills above described. The claims, therefore, are one in substance, although presented in two forms.

I. The first question is whether it is competent for the trustees of a savings bank, at a time when there are no funds in the bank for investment, to agree to take shares in a manufacturing corporation, and thereby create a debt binding upon the bank.

We think not. It is familiar law that a corporation possesses such powers, and such only, as the law of its creation confers upon it. The rule is stated with great uniformity.

" A corporation has only such powers as are specifically granted, or such as are necessary for carrying the former into effect; and these powers can only be exercised for the purposes contemplated by its charter." Brightley's Federal Digest, citing

*Humphreville Copper Co.* v. *Sterling*, 1 West. L. Mo. 126. *Beaty* v. *Knowler*, 4 Pet. 152. S. C. 1 McL. 41. *Perrine* v. *Chesapeake & Del. Canal Co.*, 9 How. 172. *Farnum* v. *Blackstone Canal Co.*, 1 Sum. 46.

" A corporation can do no acts, and make no contracts, either within or without the state which created it, except such as are authorized by its charter." Br. Fed. Dig., citing *Bank of Augusta* v. *Earle*, 13 Pet. 519. *Tombigbee R. R. Co.* v. *Kneeland*, 4 How. 16. *Runyan* v. *Coster's Lessee*, 14 Pet. 122.

" A corporation, being the mere creature of law, possesses only those properties which the charter of its creation confers upon it, either expressly, or as incidental to its very existence." Marshall, C. J., in *Dartmouth College* v. *Woodward*, 4 Wheat. 518, 636.

" An incidental power is one that is directly and immediately appropriate to the execution of the specific power granted, and not one that has a slight or remote relation to it." *Hood* v. *N. Y. & N. H. Railroad*, 22 Conn. 1, and 502.

As corporations are created by public acts of the legislature, and all their powers, duties and obligations are declared and clearly defined by public law, parties dealing with them must take notice of those powers and the limitations upon them, at their peril; and will not be allowed to plead ignorance of those powers and limitations in avoidance of the defense of *ultra vires*. *Pearce* v. *Mad. & Ind. Railroad*, 21 How. 441. *Andrews* v. *Ins. Co.*, 37 Maine, 256.

" In the United States, corporations cannot purchase, or hold, or deal in the stocks of other corporations, unless expressly authorized to do so by law." Green's Brice's Ultra Vires, 95, note, citing a large number of authorities.

" It certainly needs no argument or authority to show that a corporation created for the purpose of insurance has no power to advance its moneys or obligations to sustain another corporation in a similar or dissimilar business." Opinion of the court in *Berry, receiver*, v. *Yates*, 24 Barb. 199.

" When the directors of the company subscribed for stock in a building corporation, whatever may have been their motive, they transcended the powers conferred upon them, and departed from

the legitimate business of the company, as much as if they had subscribed for stock in a manufacturing or steamboat company; and such subscription, in our opinion, is not binding upon the defendants, and any payments made upon it to the plaintiffs would be money received without consideration." Opinion of the court in *Mutual Savings Bank* v. *Meriden Agency Co.*, 24 Conn. 159.

If a corporation can purchase any portion of the capital stock of another corporation it can purchase the whole, and invest all its funds in that way, and thus be enabled to engage exclusively in a business entirely foreign to the purposes for which it was created. A banking corporation could become a manufacturing corporation, and a manufacturing corporation could become a banking corporation. This the law will not allow; and it has been held that notes given by a manufacturing corporation for the purchase of shares in a bank are not collectable. *Sumner* v. *Marey*, 3 W. & M. 105. That the notes given by a railroad corporation, for the purchase of a steamboat to be run in connection with its road, are not collectable. *Pearce* v. *Railroad*, 21 How. 441.

It would seem, therefore, upon principle as well as authority, that it is not within the authority of the trustees of a savings bank to invest its funds in the stock of manufacturing corporations, unless expressly authorized so to do by its charter, or the public laws of the state.

But we do not rest our decision upon this ground. We rest it upon the broader ground that it is not competent for the trustees of a savings bank to purchase on credit property of any kind, not needed for immediate use, or the investment of existing funds. No such power is expressly conferred upon them; nor do we think it can be sustained as an incidental power.

It is suggested that it may be convenient in this way to provide, in advance, for the investment of funds that may afterwards come into the possession of the bank. We think the creation of debts, by corporations or individuals, for no other purpose than to provide a ready way to dispose of future acquisitions, a proceeding of very questionable convenience; that in the great

majority of cases, it would be likely to prove, as it did in this case, very inconvenient. But it is a sufficient answer to say that the law imposes no duty upon the trustees of savings banks to provide for the investment of future funds or future deposits. Their whole duty is performed when they have provided safe investments for the funds already committed to their care. To hold that they may create debts binding upon existing depositors for the benefit of future depositors, whose money, after all, may never be committed to their care, would be a doctrine as startling as it would be unprecedented.

II. The second ground on which the claim of the Franklin Company is sought to be maintained is this: It is said that where a corporation is authorized to hire money for any purpose, mere knowledge on the part of the lender that it is to be used for an illegal purpose will not preclude a recovery. This may be true. But the claim in this case is not for money lent. It is for money paid. And the latter is the only claim which the evidence tends to support. Ordinarily such a distinction is unimportant. But in this case it is vital. It is the hinge on which the case turns. It may be true that when money is lent, and the borrower is left free to use it as he pleases, mere knowledge on the part of the lender that the borrower intends to use it for an illegal purpose will not bar a recovery. But it is well settled that if it be a part of the agreement that the money shall be used for an illegal purpose, or anything is done by the lender in furtherance of such a use of the money, a recovery therefor cannot be had. Thus, the mere knowledge of the lender that the borrower of money intends to gamble with it, if, by the terms of the agreement, the latter is left free to use it as he pleases, may not constitute a bar to a recovery of it. But it is well settled that if the money is lent for the express purpose of enabling the borrower to gamble with it, a recovery cannot be had. *Cannan* v. *Bryce*, 3 Barn. & Ald. 179. *McKinnell* v. *Robinson*, 3 M. & W. 434. *Tracy* v. *Talmage*, 14 N. Y. 162. As already stated, there is no claim in this case for money lent. And the evidence would not support such a claim if there was one. The money was never for a moment in the possession of the bank. Never, for a moment, did the

bank possess either the right or the power to use the money as it pleased. The agreement was that the Franklin Company should pay for the stock for which the trustees of the bank had subscribed, and take the stock and hold it as security. We thus see that by the very terms of the agreement the money was to be applied to a specified purpose, and that purpose an illegal one. We use the word "illegal," not in the sense of *malum in se,* nor *malum prohibitum,* but in the sense in which it is used to describe the unauthorized acts of corporations—acts and contracts *ultra vires.*

"The contracts of corporations which are not authorized by their charters are illegal, because they are made in contravention of public policy. . . . Although the unauthorized contract may be neither *malum in se,* nor *malum prohibitum,* but, on the contrary, may be for some benevolent or worthy object,—as to build an almshouse or a college, or to purchase and distribute tracts or books of instruction—yet, if it is a violation of public policy for corporations to exercise powers which have never been granted to them, such contracts, notwithstanding their praiseworthy nature, are illegal and void." Selden, J., in *Bissell* v. *Railroad Companies,* 22 N. Y. 258, 285.

"Any application of, or dealing with, the capital, or any funds or money of the company, which may come under the control or management of the directors, or governing body of the company, in any manner not distinctly authorized by the act of parliament, is, in my opinion, an illegal application or dealing." Lord Langdale, in *Solomons* v. *Laing,* 12 Beavan, 339.

These extracts are to show the sense in which the word "illegal" is used when employed to describe the unauthorized acts and contracts of corporations. And, with respect to such acts and contracts, it has been very aptly said that the powers and franchises of corporations are grants from the government; that it would be just as reasonable and just as legal to allow one who has a patent for one hundred acres of land, to take possession of two hundred acres, as to allow a corporation to usurp and exercise a power not conveyed to it in its charter.

III.   Another ground on which the Franklin Company claims

to recover is that, when a contract has been executed, in whole or in part, and the corporation has thereby received a benefit, a recovery may be had by the other contracting party to the extent of the benefit thus conferred, notwithstanding the contract was *ultra vires.* It is a sufficient answer to this argument to say that the case fails to show that the savings bank has been thus benefit-ted. The $50,000 paid by the Franklin Company was paid directly to the Continental Mills. Not a cent of it ever came into the possession of the savings bank. The stock for which the $50,000 was paid was issued directly to the Franklin Company. The title never for a moment vested in the savings bank. Although, by the terms of the agreement, the Franklin Company was to hold the stock as collateral security merely, still, the agree-ment being *ultra vires,* cannot be enforced. Nothing possessing the slightest intrinsic value, not even a right of action, was ever secured to or vested in the savings bank. There is absolutely nothing on which a *quantum meruit* or a *quantum valebat* claim can be sustained.

*Decision of the commissioners affirmed.*

*Claim of the Franklin Company disallowed.*

APPLETON, C. J., BARROWS, VIRGIN, PETERS and LIBBEY, JJ., concurred.