LOUISVILLE, N. A. & C. R. CO. v. OHIO VALLEY IMPROVEMENT & CONTRACT CO. et al.

(Circuit Court, D. Kentucky. September 11, 1894.)

1. RAILWAY COMPANIES—GUARANTY OF BONDS OF OTHER COMPANIES—INDIANA STATUTE.
    The statutes of Indiana (Rev. St. 1838, §§ 3951a-3951c; Rev. St. 1894, §§ 5216-5218) provide that the board of directors of a railway company may, upon the petition of the holders of a majority of the stock of the company, direct the execution of a guaranty of the bonds of another company. The directors of the L. Ry. Co., an Indiana corporation, without any action by the stockholders, directed the execution of a guaranty of the bonds of the B. Ry. Co. The guaranty, as indorsed on the bonds, contained no representation that the stockholders had petitioned for its execution. The stockholders promptly disavowed the action of the directors. *Held*, that the guaranty was invalid, both as between the L. Ry. Co. and another corporation, at whose instance the guaranty was made, and as between the L. Ry. Co. and subsequent holders of the guarantied bonds, for value and without notice. Zabriskie v. Railroad Co., 23 How. 381, distinguished.

2. CONTRACTS—GUARANTY—PARTIES.
    A guaranty indorsed on a railroad bond, and running to the holder of such bond, passes with the bond, by delivery, and is not affected by a statute

making obligations which pass by assignment subject to the same defenses in the hands of the assignee as in those of the assignor.

Bill by the Louisville, New Albany & Chicago Railroad Company against the Ohio Valley Improvement & Contract Company and others for an injunction, and to cancel a guaranty on certain bonds.

Henry Crawford and Helen & Bruce, for complainant.

Humphrey & Davie, St. John Boyle, Noble & Sherley, and Barnett, Miller & Barnett, for defendants.

BARR, District Judge. The decision of Justice Brewer and Judge Jackson, after full consideration, that this court has jurisdiction of this cause, and the granting of an injunction, should, we think, settle for this court some of the questions argued by counsel.[1] That decision determined the complainant is an Indiana corporation, and not a Kentucky one; hence, whatever authority the complainant had or has to guaranty the mortgage bonds issued by the Richmond, Nicholasville, Irvine & Beattysville Railroad Company is derived from the corporate powers granted by that state. It is also determined that upon the then showing the complainant was entitled to an injunction to prevent the disposition by the Ohio Valley Improvement & Contract Company and others of the bonds of the Beattysville Railway Company with the guaranty of the complainant upon them. The subsequent orders entered by this court canceling the complainant's guaranty on the bonds held by the Ohio Valley Contract Company were judgments against the validity of those guaranties, but, as those orders were made without discussion other than given the cause when the injunction was granted, it is proper this court should consider the general question of authority to make those guaranties, as well as the right of bona fide holders of the bonds, for value, without notice of any defect in, or want of authority to execute, the guaranty. The consideration for the guaranty on the coupon bonds of the Beattysville Railway Company was to be the delivery of three-fourths of the capital stock of that railway company to complainant by the Ohio Valley Contract Company. These bonds had been issued by the Beattysville Railway Company, and were to be delivered to the contract company as the Beattysville Railway was constructed. The guaranty which was indorsed on $1,185,000 of bonds is as follows:

"For value received, the Louisville, New Albany & Chicago Railway Company hereby guaranties to the holder of the within bond the payment by the obligor therein of the principal and interest thereof, in accordance with the terms thereof. In witness whereof the said railway company has caused its corporate name to be signed hereto by its president and its seal to be attached by its secretary."

The authority to guaranty the payment of mortgage coupon bonds of another railway company does not arise, nor can it be implied, from the general business of the complainant, either in construct-

[1] The judges named filed no opinion, nor were their oral opinions reduced to writing.

ing or operating its railroad, but is an authority which must be given to it, as a railroad corporation, by the state, expressly, or be clearly implied from other corporate powers granted to such a corporation.   The provisions of the Indiana statute upon the subject of guaranty bonds of another company are as follows:

"3951a.  Guaranty of Bonds of Another Company.  (1) The board of directors of any railway company organized under and pursuant to the laws of the state of Indiana, whose line of railway extends across the state in either direction, may, upon the petition of the holders of a majority of the stock of such railway company, direct the execution by such railway company of an indorsement guaranteeing the payment of the principal and interest of the bonds of any railway company organized under or pursuant to the laws of any adjoining state, the construction of whose line or lines of railway would be beneficial to the business or traffic of the railway so indorsing or guaranteeing such bonds.

"3951b.  Petition of Stockholders.  (2) The petition of the stockholders specified in the preceding section of this act shall state the facts relied on to show the benefits accruing to the company indorsing or guaranteeing the bonds above mentioned.

"3951c.  Limitation of the Power.  (3) No railway company shall, under the provisions of this act, indorse or guarantee the bonds of any such railway company or companies, as is above mentioned, to an amount exceeding one half of the par value of the stock of the railway company so indorsing or guaranteeing as authorized under this act."   Rev. St. 1888 (Rev. St. 1894, §§ 5216–5218).

It is quite clear from this record that no effort was made by the board of directors of the complainant, or any one else, to conform to the provisions of this statute in regard to a petition of the holders of the majority of the stock in complainant's company, and that the order of the board, directing the president and secretary to guaranty these bonds, was without the approval or petition of a majority, or any, of the stockholders.   The provisions of the Indiana statute seem to have been ignored, and the guaranty made presumably under the supposed authority of an act of the state of Kentucky approved April 7, 1882.   But, as complainant is not a Kentucky corporation, this guaranty cannot be sustained or aided by that statute.   It will be observed that the board of directors are authorized by the Indiana statute quoted to guaranty the bonds of another company only upon the petition of the holders of a majority of the stock of their company.   The stockholders, and not the board of directors, are to take the initiative, and a majority thereof determine whether there shall be a guaranty of the bonds of another company.   The board of directors may decide whether a majority has petitioned them so as to authorize a guaranty, and may determine the manner of the indorsement of guaranty, and the proper mode of executing the power given them by the petition of the holders of a majority of stock, but the authority does not exist except by and through the stockholders.   The provision of this statute which requires the facts which are relied on to show the benefit accruing to the company indorsing or guarantying the bonds to be stated in the stockholders' petition clearly shows the authority to guaranty the bonds of another company was not intended to be given the board of directors.   There is no question here as to the effect of a subsequent approval or ratification of the guaranty of

these bonds by the board of directors by the stockholders, as their action was promptly repudiated by them the first meeting after the guaranty was made, and presumably as soon as it was practical to have had a stockholders' meeting.

It is insisted that there are other provisions of the statute of Indiana which grant to railway corporations organized in that state, under its laws, corporate powers, that authorize guaranties such as made here. These powers are such as to consolidate with other railroad companies, and to buy and lease, by way of extension of their railway lines, other railroads, etc.; but the authority to guaranty the bonds of another railroad company is given in express terms in section 3951a, and the mode prescribed, and we think this precludes any implied authority arising to guaranty bonds, in cases covered by that section, by the exercise of other corporate powers given in other parts of the statute. Those parts of the statute might be pertinent to show corporate authority to buy the stock of the Beattysville Railway Company, but, as the consideration thereof was the guaranty of the payment of said company's coupon bonds, this guaranty could not be given by the action of the board of directors alone, without the petition of the stockholders, as directed by section 3951a. In Thomas v. Railroad Co., 101 U. S. 71, the supreme court, by Justice Miller, says:

"We take the general doctrine to be, in this country,—though there may be exceptional cases, and some authorities to the contrary,—that the powers of corporations organized under legislative statutes are such, and such only, as those statutes confer. Conceding the rule applicable to all statutes,—that what is fairly implied is as much granted as what is expressed,—it remains that the charter of a corporation is the measure of its powers, and that the enumeration of those powers implies the exclusion of all others."

And in the case of Central Transp. Co. v. Pullman's Palace-Car Co., 139 U. S. 48, 11 Sup. Ct. 478, Justice Gray, after reviewing the cases in the supreme court, says:

"The clear result of these decisions may be summed up thus: The charter of a corporation, read in the light of any general laws which are applicable, is the measure of its powers, and the enumeration of those powers implies the exclusion of all others not fairly incidental. All contracts made by a corporation beyond the scope of those powers are unlawful and void, and no action can be maintained upon them in the courts, and this upon three distinct grounds: The obligation of every one contracting with a corporation to take notice of the legal limits of its powers; the interest of the stockholders, not to be subjected to risks which they have never undertaken; and, above all, the interest of the public, that the corporation shall not transcend the powers conferred upon it by laws."

This court and the circuit court of appeals of this (Sixth) circuit have recently considered the question of the corporate right of the Kentucky Union Land Company to guaranty the payment of the coupon bonds of the Kentucky Union Railway Company, and have sustained the land company's authority to make the guaranty; but this was upon a construction of the powers given in the charter of that company,—especially the power to engage in the business of transportation, and to consolidate with any railroad company chartered or to be chartered. See Tod v. Land Co., 57 Fed. 48; Marbury v. Land Co. (Oct. Term, 1893) 10 C. C. A. 393, 62 Fed. 335.

The doctrine, as announced by the supreme court, through Justices Miller and Gray, as to the extent and the limitations of corporate powers, when applied to this case, is, we think, conclusive, if our construction of the Indiana statute is correct, against the right of the board of directors of complainant's company to enter into the contract of October, 1889, and subsequently to guaranty the bonds of the Beattysville Railway Company. As between the complainant and the Ohio Valley Contract Company, the guaranty on the Beattysville Railway Company is invalid. See, also, Pearce v. Railroad Co., 21 How. 441; Pennsylvania R. Co. v. St. Louis, A. & T. H. R. Co., 118 U. S. 307, 6 Sup. Ct. 1094; Colman v. Railway Co., 10 Beav. 1; East Anglian Ry. Co. v. Eastern Counties Ry. Co., 11 C. B. 775; Davis v. Railroad Co., 131 Mass. 258; Marble Co. v. Harvey, 92 Tenn. 115, 20 S. W. 427.

Many of the defendants are bona fide purchasers and holders of these bonds, having bought them on the market for full value, with the guaranty upon them, and without knowledge or notice of the want of authority by complainant's board of directors to have the guaranty made; and they insist the guaranty is not invalid, as against them, and should not be canceled. The first inquiry upon this branch of the case is the relation which these bondholders have to the guaranty. The guaranty is, in terms, "to the holder of the within bond"; and although the Ohio Valley Contract Company was at the time of the indorsement the holder of some of these bonds, and the guaranty was made under a contract with that company, which was to deliver three-fourths of the capital stock of the Beattysville Railway Company as the consideration thereof, it was evidently the intention of the parties that the guaranty was to be to whoever might be the holder of the bond. The guaranty was intended to pass with the bond, and such is the legal effect of the indorsement. But it is insisted that although the legal title to this guaranty passed with the ownership of the bond upon which it is indorsed, yet, by the provisions of the Kentucky statute, the guaranty is subject to the same defenses as exist against the Ohio Valley Contract Company. The provisions of the Kentucky statute are as follows:

"All bonds, bills or notes for money or property shall be assignable so as to vest the right of action in the assignee, but except in case of bills of exchange, not to impair the right to any defense, discount or set-off that the defendant has or might have used against the original obligee, or intermediate assignor before notice of the assignment." Section 474.

The Code of Practice (section 19) provides:

"In the case of an assignment of a thing in action, the action by the assignee is without prejudice to any discount, set off or defense now allowed * * *. This section does not apply to bills of exchange, nor promissory notes placed upon the footing of bills of exchange, nor to common orders or checks."

These are the only provisions touching the question under consideration. These provisions apply only when an assignment is necessary to pass the title to the thing in action. That is, where the bill, bond, or note had an obligee other than the party suing,

and from whom he gets his right of action, and in whose name the suit would be brought, except for the provisions of the law. But here the guaranty is not to the Ohio Valley Contract Company, or to the order of that company. The obligation of the guaranty is, in terms, to the holder of each bond, and it is to that holder the principal and interest of the bond is guarantied to be paid if the obligor defaults. These bonds were intended by the parties to be placed upon the market and sold, and they passed to a purchaser by delivery, and not by virtue of the statute of assignments enacted by Kentucky. This is by the general commercial law. City of Lexington v. Butler, 14 Wall. 282. The title to the obligation of guaranty passed with the bond, without assignment, under the statute, because the guaranty was to whoever might be the holder thereof, and the holder was by a bona fide delivery. There is no need, therefore, of an assignment, under the provisions of the Kentucky statutes. Thus, as no assignment was necessary, and there being no assignment, the statute authorizing assignment, with reservations as to defenses, etc., as against an original obligee, has no application. An assignment of the thing in action is necessary only when there can be an original obligee other than the party suing. This guaranty, if valid, does not place the complainant in the position of a second maker on the Beattysville railway bonds, nor does it place the company in the position of an indorser of a bill of exchange, but the position is somewhat analogous. An indorser of a bill of exchange agrees to pay if the parties previously bound thereon do not, and he is given legal notice of the defaults, and here the complainant guaranties the obligor will pay principal and interest of the bond according to its terms. It is quite unnecessary to review the conflicting authorities upon this subject. We conclude that as the bonds pass by delivery, and the obligation of the guaranty passes with the bonds, the provisions of the Kentucky statute of assignments as to defenses, etc., do not apply. We concur in what was said by Justice Matthews in Davis v. Wells, 104 U. S. 169:

"It has always been held in this court that, notwithstanding the contract of guaranty is the obligation of a surety, it is to be construed as a mercantile instrument, in furtherance of its spirit, and liberally, to promote the use and convenience of commercial intercourse."

Although this guaranty passed with the bond upon which it was indorsed, and inured to the benefit of the holder thereof, the question remains whether the guaranty is valid and enforceable in the hands of a bona fide holder for value, without notice of the want of authority in the board of directors and its president to make the guaranty. There are no recitals in this guaranty, other than that it is given for value received, and there can be no estoppel or presumption against the complainant corporation, in favor of innocent holders, other than that which may arise from the guaranty itself, and the fact these bonds were put upon the market, with the guaranty upon them, with the consent of the board of directors of complainant. The guaranty of such bonds was not within the scope of the business of operating a railway, nor could the corporate power to thus guaranty the bonds of another railway company.

constructing a railway in another state be inferred from the usage of railway companies. The nature of the contract should have been notice to all purchasers to inquire into the corporate powers of the guarantying railway company, as it was unusual, and outside of the ordinary business of a railway company, either in operating or constructing railroads. Purchasers on the bond market were bound to know that the president and board of directors of complainant were not the corporation, but its agents, and that the corporate power to guaranty such bonds did not ordinarily exist in the directory. There were no recitals, either in the resolution of the board of directors, or in the guaranty itself, to mislead the purchaser, or stay inquiry. The commercial character of the bond and guaranty thereon did not relieve a purchaser from the risk of the want of corporate authority to execute the guaranty. In speaking of notes and bonds issued or accepted by an agent acting under a general or special power, the supreme court says:

"In each case the person dealing with the agent, knowing that he acts only by virtue of a delegated power, must, at his peril, see that the paper on which he relies comes within the power under which the agent acts. And this applies to every person who takes the paper afterwards; for it is to be kept in mind that the protection which the commercial usage throws around negotiable paper cannot be used to establish the authority by which it was originally issued."

See Floyd Acceptances, 7 Wall. 676, and approved in Marsh v. Fulton County, 10 Wall. 683.

It is insisted that as the board of directors of complainant's company had the corporate authority to guaranty these bonds, under certain circumstances, these innocent purchasers had a right to presume the necessary conditions existed to confer the authority upon them. The language of Justice Swayne in Merchants' Bank v. State Bank, 10 Wall. 604, is quoted as a general proposition applicable to all contracts with corporations. Justice Swayne said:

"Where a party deals with a corporation in good faith, the transaction is not ultra vires, and he is unaware of any defect of authority or other irregularity on the part of those acting for the corporation, and there is nothing to excite suspicion of such defect or irregularity, the corporation is bound by the contract, although such defect or irregularity in part exists. If the contract can be valid under any circumstances, an innocent party, in such a case, has a right to presume their existence, and the corporation is estopped to deny them."

This language is applicable as in that case, where the company had the corporate authority to make the contract, and the agent who made it was within the general scope of his duties, though not especially authorized to make the contract in controversy; but it cannot be true, broadly stated, else stockholders in corporations would be without the protection of the limitations and conditions placed upon their corporation by the charter, and the state itself would be without the power to prescribe conditions to the exercise of corporate powers, or prescribe the mode or agencies by which corporate powers should be exercised. Here the condition upon which the board of directors had the authority to make the guaranty of the mortgage bonds of another railway company was the request of a majority of the stock of complainant's company, and this was to be in the shape

of a written petition, and the reasons therefor were to be given. This condition precedent to the corporate authority of the board of directors was not performed, or attempted to be performed. It may be the board of directors might have had the right to determine whether, if a petition of stockholders had been presented, it was as required by the statute, as to the number of stockholders and the character of the petition. But there was no action of stockholders at all, and there was no recital in the resolution of the board, or in the guaranty, that there was. We do not, therefore, see that the position of these bondholders, who are bona fide purchasers without notice, is other or different from that of the Ohio Valley Company.

It is earnestly contended that in the instance where the Cleveland, Columbus & Cincinnati Railroad Company guarantied the payment of the bonds of the Columbus, Piqua & Indiana Railroad Company, the supreme court has decided the other way, in Zabriskie v. Railroad Co., 23 How. 381. There the contest was between a stockholder of the Cleveland, Columbus & Cincinnati Railroad Company and the bona fide holders of the guarantied bonds; the stockholders seeking to enjoin the payment of the interest on the bonds guarantied by the guarantor, the Cleveland, Columbus & Cincinnati Railroad Company. There was an effort to sustain the stockholders' suit by allegation of misconduct of one or more of the directors of the Columbus, Piqua & Indiana Railroad Company; but the real objection to the guaranty was an alleged want of authority, as the stockholders did not assent thereto by a two-thirds vote before the contract of guaranty was entered into, as was required by the statute under which the Cleveland, Columbus & Cincinnati Railroad Company was organized. It appeared in that case, the contract under which the guaranty was to be made was entered into in March, 1854, and that in the summer (July) of 1854, at a called meeting of the stockholders of the Cleveland, Columbus & Cincinnati Railroad Company, the indorsement of guaranty was expressly approved by the stockholders, without a recorded dissent. The suing stockholder was present by proxy, who verbally dissented, but declined to vote, although his vote would have controlled the meeting. After this stockholders' meeting, these bonds were sold in the market "under an uncontradicted representation of their validity through the votes" at the stockholders' meeting, and the bonds were freely purchased upon the representation of the action of the stockholders. There was no action of the stockholders of the Cleveland, Columbus & Cincinnati Railroad Company repudiating the action of the company in making the guaranty, nor did the suing stockholder take any action to modify or repudiate the action of his company until the fall of 1856, and after the Columbus, Piqua & Indiana Railroad Company had become insolvent. He, in his suit, denied any efficacy to the vote of the stockholders in July, 1854, because the notice was insufficient as to time of notice, and the failure to state its purpose; and he contended that not more than half of the stock was represented, and two-thirds of those present did not vote. The court refused to sustain this stockholder's injunction, under the circumstances, and Justice Campbell, in the course of his opinion, said:

"The observations of Lord St. Leonards, in the house of lords (Bargate v. Shortridge, 5 H. L. Cas. 297), in reference to the effect of the conduct of a board of directors, as determining the liability of a corporation, are applicable to this corporation under the facts of this case. 'It does appear to me,' he says, 'that if, by a course of action, the directors of a company neglect precautions which they ought to attend to, and thereby lead third persons to deal together as upon real transactions, and to embark money or credit in a concern of this sort, these directors cannot, after five or six years have elapsed, turn around, and themselves raise the objection that they have not taken these precautions, and that the shareholders ought to have inquired and ascertained the matter. * * * The way, therefore, in which I propose to put it to your lordships, in point of law, is this: The question is not whether that irregularity can be considered as unimportant, or as being different in equity from what it is in law, but the question simply is whether, by that continued course of dealing, the directors have not bound themselves to such an extent that they cannot be heard, in a court of justice, to set up, with a view to defeat the rights of the parties with whom they have been dealing, that particular clause enjoining them to do an act which they themselves have neglected to do.' This principle does not impugn the doctrine that a corporation cannot vary from the object of its creation, and that persons dealing with a company must take notice of whatever is contained in the law of their organization. This doctrine has been constantly affirmed in this court, and has been ingrafted upon the common law of Ohio. Pearce v. Railroad Co., 21 How. 441; Straus v. Insurance Co., 5 Ohio St. 59. But the principle includes those cases in which a corporation acts within the range of its general authority, but fails to comply with some formality or regulation which it should not have neglected, but which it has chosen to disregard."

In that case the stockholders' meeting had been held, and proper resolution, by unanimous vote,—so far as the record showed,—passed, and the bonds had been sold upon the representation of that vote, taken when the suing stockholder was present by proxy. Certainly, the buyers of these bonds should not have been bound by facts which were not in the record, and which contradicted the record upon which the bonds were sold. The fact that the suing stockholder was present by proxy, and refused to put on record his dissent, which would have been decisive, would, of itself, have been sufficient to prevent his obtaining the relief he sought. But construing the language of the court in its broadest acceptation, and applying it to the case at bar, it is only to the effect that had there been a petition by stockholders presented to the board of directors of complainant's company, directing this guaranty, and that board had acted as directed, reciting a majority had petitioned, the question of its compliance with the statute, as to the reasons given or number of stockholders petitioning, would not be thereafter open to inquiry, as against bona fide purchasers.

The case of Toppan v. Railroad Co., reported in 1 Flip. 75, Fed. Cas. No. 14,099, is also much relied on by defendants' counsel. That case arose on the same guaranty of the bonds of the Columbus, Piqua & Indiana Railroad Company mentioned in the case of Zabriskie v. Railroad Co., supra. The action was at law, by a bondholder of the guarantied bonds, for the interest thereon, against the Cleveland, Columbus & Cincinnati Railroad Company. The opinion of Judge Willson, of the Northern district of Ohio, was upon a demurrer to the declaration. One of the objections urged was that the guaranty was not negotiable, and the holder of the bond could not sue and recover thereon. Another was that, the defend-

ant having no power in its charter to make the guaranty, the legal authority and the facts and circumstances contemplated by the general act of 1852, by which such power could be exercised, should be fully set out in the declaration. The learned court decided that the guaranty was negotiable, and passed with the bond upon which it was indorsed. He also decided that the allegation in the declaration that "said guaranty was duly signed by the defendant, by its then president, who was authorized to execute the same, and was afterwards, to wit," etc., "duly ratified and confirmed by the stockholders of said company," was sufficient. The latter ruling raised the question of the materiality, under the law of 1852, of the time when two-thirds of the stockholders assented to the guaranty. The statute of 1852 gave to the railroad companies authority to aid, etc., other railroads, when certain facts and circumstances existed, and had the proviso "that no such aid shall be furnished, nor any purchase, lease or arrangement perfected until a meeting of the stockholders of each of said companies shall have been called by the directors thereof at such time and place, and in such manner as they shall designate, and the holders of at least two-thirds of the stock of such companies represented at such meeting in person or by proxy, and voting thereat, shall have assented." Laws 1852, p. 281, § 24. The court, in discussing the point, used language which, when disconnected from the case, is quite broad, but held the allegation of the declaration was sufficient, and that the time of the assent of two-thirds of the stockholders was not material. It appeared in that case that the action of the directory in making the guaranty had been ratified by the stockholders. The extent of this decision is that the assent of two-thirds of the stockholders to the aid, as given, might be given after the aid as well as before. That law provided for the arrangements and agreements to be made by the directors of the respective railroad companies, and for them to call the stockholders together at such time, place, and manner as they should determine, and then the action or proposed action of the directors should be assented to, and was to be before the aid was furnished, or the purchase, lease, or arrangement was perfected. In that instance all arrangements and agreements and the initiative was to be taken by the directors, and in fact, as is stated in the Zabriskie Case by Justice Campbell, the bonds with the guaranty upon them were not put upon the market until after the stockholders assented to the guaranty. It is not intended to state the stockholders assented to the guaranty before the guaranty was indorsed upon the bonds, but before they were put upon the market. In the case at bar the initiative was to be taken by the stockholders, and they were to determine whether there should be a guaranty, and direct the directors by a petition in writing, giving the facts upon which they based their determination. This extraordinary corporate power was to be exercised by the stockholders themselves, and not by their agents, the board of directors, and in a way and manner that all who dealt with the corporation could know, if they desired. These two cases, both in principle and facts, fall far short of the present case.

This view makes it unnecessary to consider and determine whether all of the defendants are bona fide holders of these bonds, without notice of the facts which make the guaranty invalid. The complainant is entitled to have its injunction sustained, and the guaranty on defendants' bonds canceled, and a decree will go accordingly.